Good morning, Your Honors. I'm Steve Blau, Deputy City Attorney for the City of Los Angeles, the Appellant. We're here on an appeal of what we consider to be an extraordinary opinion that is entirely unsupported by the record and is based upon unreasonable beliefs and misapplication of legal principles decided first in this case and later applied, in other cases, by this Court. The linchpin for the District Court's ruling here is, and I'm summarizing, paraphrasing from page 41, is that the plaintiff casts direct doubt with compelling evidence that stand-alone arcades have not and have never been economically viable and that defendants failed to supplement the record and agreed adult arcades will close but contends such closure will not reduce speech. The factual underpinnings, there are four points I'd like to make. Let me summarize the four points and then I'll go into the detail and point to the record on those four points. The first point is you cannot possibly reach the conclusion from this record that it was unreasonable for the legislative body to have as a premise that adult arcades will close. First, the District Court wrongfully excluded Ms. Spaulding's testimony, and even if that testimony was not excluded, there is a mountain of other evidence that supports at least a disputed tribal issue of fact as to the viability of stand-alone arcades. I've got a question. It seems to me that the, and I'll just put it out there so the other side can address it too, that the two declarations that were submitted were pretty self-serving declarations. I mean, one was by the owner of the Beverly Adult Bookstore and the other was by the person who makes adult arcades. So they put in that, and no marketing surveys, no market analysis, no other statistical evidence, and the Supreme Court has said that the evidence casting doubt must be actual and convincing, and that's the discrepancy. I'm having a problem at that very prong because of the nature of the declarations that did come in. Actually, Your Honor, if I understand the Court correctly, I think you're jumping to the end of my argument, and it seems maybe... Do we have to go in your order? Well, no, but... Can we just get to the heart of it? We fully agree, Your Honor. We believe that the declarations that were submitted, if you look at the evidence that was before the District Court now originally that went up to the Supreme Court, the evidence has been substantially enhanced by the city. There is no additional evidence in the record here by plaintiffs other than the self-serving speculative declarations that the plurality and Kennedy have both rejected and that this Court has rejected as speculative and insufficient to overcome the city's summary judgment motion. But this evidence goes to whether the city has shown a significant decrease in secondary effects by this dispersal rule and only a trivial decrease in the quantity of speech. So your burden was to show that the standalone arcades were viable and would continue and they wouldn't be more than trivially harmed. No, I don't believe that's correct, Your Honor. The issue of the viability of a standalone arcade separated out as a discrete issue is not a material issue of fact in this case. That's why the city in its summary judgment motion didn't address those financial statements. The Kennedy concurrence in the Court does not state that adult arcades must survive. Rather, he and the plurality state that the premise must be that speech will not be substantially diminished. The underlying burden to support that premise is still the very little evidence standard. The question is what could the legislative body have reasonably relied on to reach that premise. Let me interrupt. Can I interrupt for just a minute? Putting to one side who has the burden and so on, I'm just trying to understand what Justice Kennedy meant when he wrote in Alameda Books that you can't diminish secondary effects merely by diminishing the speech itself. So if you diminish the secondary effects of arcades by eliminating arcades, Kennedy says, sorry, you can't do it that way. You can eliminate the secondary effects, but it cannot be only because of the diminution of speech. So it seems to me the question as to whether or not standalone arcades, which is what you're forcing to happen, can survive is directly implicated by Kennedy's statement. Where am I missing something? I believe the Court is missing something. Yeah, so what am I missing? What the plurality goes through is analysis as to, as the retin analysis and what can flow from the retin analysis. But you're talking about the plurality, but I think we have to look at Justice Kennedy because he's the controlling vote. Right. What Kennedy adds to that is he looks at, he believes that retin should account for the fact that the premise has got to be that speech is not substantially diminished. Kennedy does not say that adult arcades must survive. He says the premise must be that speech is not substantially diminished. He then goes on to state, and I'm quoting from. I'm not sure I understood yet how you contradict how I described Kennedy's rationale. Well, because there's a difference from proving as an issue of fact that an adult arcade will survive, as opposed to having evidence in the record from which it may be possibly concluded that adult arcades will survive. Kennedy states at page 452 that if the inferences appear reasonable, we should not say there's no basis for the conclusion. Kennedy does not, as this Court has held in Tullis, that low, little, very little evidentiary standard, the reasonableness of the reliance, whether the evidence is reasonably believed to be relevant, is necessary to support the premise. If we go back to the initial legislative intent, certainly the city could not think, we don't like arcades, let's close them down, it will decrease crime. That would be an inappropriate premise. Why do you keep saying that we look at whether the legislature or the city or whatever the enabling body is for the legislation or the ordinance has a reasonable belief instead of what actually happens? Well, because that's what Alameda books holds, and that's what Kennedy holds. No, but what Justice Kennedy says is that both the purpose and the effect of a zoning ordinance must be to reduce the secondary effects, not speech. So we look both at the purpose and the effect. And I'm kind of sitting here agreeing with Judge Fletcher that when Kennedy says that the city may not assert that by reducing the secondary effects, that it can reduce the secondary effects by reducing speech in the same proportion, that that's invalid. And as a practical matter, I mean, if I accepted that as a practical matter, forcing the adult bookstore and the adult arcades to separate would result in the adult arcades closing entirely, then what all the city's doing is reducing the secondary effects by reducing speech in the same proportion. I think that's what Judge Prayerson held. It's just that the level of proof of that is where I'm having a problem, because he did hold that. He made that finding. But I'm just wondering whether that finding had basis from this record. Actually, I believe the Court is addressing two separate issues. One, the relevancy of the viability of standalone arcades, and it's the city's position, and I'd be happy to elaborate further, that that's not relevant. But the second point is, if the Court were even to find it relevant, the question is, what evidence is in the record that allows the District Court the sufficiency of the evidence? Yeah, and I think Justice Kennedy said that, too. One, what's the issue? And then, two, what's the sufficiency of the evidence to prove it? And so I'm thinking, one judge, that it's relevant. But was the evidence sufficient to demonstrate it? Let me just jump a moment back. I'm inclined to agree with that analysis. I think that you're questioning relevancy, which I think is very hard to demonstrate. Just so you know, I'm with them. I think the basis for the finding is questionable, as you've indicated. So you can proceed at having thought about those evaluations. I'd like to first address briefly the relevancy issue, and then get back to the evidence. You've just lost 3-0 on the relevancy issue, just so you know. Okay. I do want to point out that every court, every Ninth Circuit opinion subsequent to that, as well as a list of Ninth Circuit and U.S. Supreme Court decisions before that quoted in our briefs, all hold that plaintiffs, that adult businesses and people involved in speech are not entitled to their first choice avenue of communications. If leafleting is available, it's appropriate to not allow political signs if there are negative effects. Here, the negative effects are undisputed and substantial. I just don't want to overlook that long line of authority. That's another question I have, because what is the evidence in the record that there are greater I mean, there is evidence in the record, and Supreme Court said 1977 is the rate sufficient to say when businesses are congregated together, there's greater secondary effects. Okay, that's fine. But specifically, a bookstore that contains an arcade. Where is it in the record that that has greater secondary effects? Okay, so I'll leave relevancy, and now I'll move into the secondary effects analysis before I go into the initial issue that Your Honor touched on. Okay. The issue of the secondary effects analysis, we of course have the 1977 study, which the Supreme Court held was appropriate. We have the city's experience with talk of the valley. What the city did here is we went out and we looked at all of the combined adult bookstore arcades in the city and compared the crime associated in and around those stores with the crime associated around the stand-alone bookstores in the city. Stand-alone adult bookstores? Stand-alone adult bookstores and stand-alone adult video arcades. Were there any stand-alone adult video arcades? No, there were none in the city, and the city's expert says that they first popped up in connection with adult arcades in 1971. And I want to point out that they did exist before. That's in the record, that's in the district court's opinion, and it's not something that's challenged here. But what we find is, on average, all of the crime-related measures, arrests, calls to service, complaints, are all higher at the combined stores than at the stand-alone stores. Now, plaintiffs have inappropriately tried to undercut that with methodological attacks, claiming that we didn't account for underlying variations in locations of these stores. First, we're not required to do that under Alameda Books. Second, we do have, luckily, one case in the city where we don't need to account for underlying variations, because we have a specific example, Talk of the Valley, where we had a combined adult bookstore arcade, and that was abated, and the crime plummeted from several hundred incidents. The actual discussion is Volume 6 of the Excerpts of Record, page 1189 through 1190. But there were hundreds of incidents before, and after the incidents, I think, I believe they plummeted to two. This is when you closed it entirely. No. They just abated it. There was a combined bookstore arcade. There were nuisance and complaints. There was a nuisance abatement action, and they abated, they closed down the adult arcade portion so that only what was left was a stand-alone single adult bookstore.  Just the bookstore. And the crime went from here down to nothing. What's the rationale? Why? Why did the crime get reduced when the video arcade was closed? Well, it's the city's position that that supports the legislative determination. I said why. What's the rationale? I mean, why would crime be reduced if you removed the... The rationale, according to the city's expert, is that the combined business brings in more soft targets. I mean, it's the analysis that flows from Alameda. And that the larger area of soft targets results in more opportunities for crime. And that if they're separated so that the city prevents these adult superstores from forming, that that furthers the dispersal ordinance and is a proper legislative action. All right. So now let's go to the sufficiency of the evidence. And the other, there's also evidence in there on UCR, uniform crime reporting averages, all lower for the stand-alone stores than the combined. Okay. So in that case, you got rid of the arcade altogether. So now let's go to the sufficiency of the evidence on if you were to separate the two. Okay. Like Rock of the Valley, would the adult arcades necessarily close? Okay. First, we have to look at the fact that the regulation on its face does not ban adult arcades. Second, there's no prohibition, and this is in the record, against opening an adult arcade in combination with any other type of store. You can open it up with any other type of store, as long as it's not adult. You could even open it up with an adult. There's an obvious connection, though, with these stores. You can even open it up with a bookstore that sells adult books, as long as that adult component doesn't reach a substantial portion of its stock and trade. So you can even have an arcade combined with an adult bookstore selling incidental adult books. There is no evidence of... Is that a modified bookstore? Is that what you're talking about? It just could be a standalone arcade that happens to sell some incidental adult books, is what is permitted under the code, under the plain language of the ordinance. Would the ordinance allow an arcade at the back of a 7-Eleven? Absolutely. And would it allow an arcade at the back of a store that has 51% of its books, sort of Charles Dickens and George Eliot and so on, and 49% of its books, dirty picture books? I believe the ordinance defines an adult bookstore as having a substantial portion of its stock and trade, and although it's not in the record, I understand that 51% would be substantial. And would it be required under the ordinance that any of this 51% of George Eliot and Charles Dickens actually be sold, or do they just have to be sitting on the shelf? The 51% would, 49% adult material would still make it adult. I believe the threshold is lower to become non-adult. And again, Your Honor, again, that's not an issue that's before this Court. I don't know how that would be enforced and what the sales would be. Okay. But it is permissible. The record does not contain any evidence that these plaintiffs ever tried to open an adult bookstore. There is no evidence of any financial analysis from the self-serving declarations that something would be inappropriate, that they would not be able to make money. Probably of most poignance are two facts. First, we do have a record of the historical existence of standalone arcades. Not only does case law talk about it, and that's the Sansa case, but it's a finding of the district court below that's not appealed. It's also included in the request for judicial notice that the city initially filed. We also have, and this was an issue that the city raised on motion for reconsideration, the analysis of Ms. Spaulding in her declaration. Now, her second declaration, we have to remember, the district court only struck her final conclusion because it didn't like that final conclusion. But there's mountains of evidence in that declaration in her report showing that adult arcades, it's reasonable to conclude they can be viable. I don't think he didn't like it. I think what he said is that showing the viability of each separate portion of the business, while it's still linked together, cannot support the inferential leap that standalone, they would have equal success. But the evidence that is also in Ms. Spaulding's declaration, which was not stricken, is her financial analysis. And that's in the excerpts of record that was filed on the seal. When you look at these two plaintiffs' cases. She has no operational knowledge about these things, though, does she? Yes, she has their financial records. She went to visit the store. Well, that doesn't prove much about why people go to these places, does it? No, but what it does enable her to show is how profitable they are. But the critical question that Judge Preggerson thought he had in front of him is, is an arcade as a standalone business a viable business? And she does not address that. She just takes the operational businesses that she finds, which are combination bookstores, and please don't interrupt, combination bookstores and arcades. She divvies up the overhead between the two of them and says they're each independently profitable. But there's nothing in her analysis that says that a standalone arcade will survive. Well, that's her ultimate conclusion. What do you mean that's her ultimate conclusion? That's what she testifies at the end of her declaration, that based upon all of the evidence that she's looked at in her report and her industry research, an adult arcade can survive by itself. But the only basis for the support for that conclusion, the only support for that conclusion is her just divvying up the numbers of these businesses that are operating as combined businesses. But, again, it gets back to the premise that the district court confused here. The issue is not the factual ability of an adult arcade to survive. That's back to relevance. Excuse me? That's back to relevance. It's not only back, it's partially back to relevance, but it's also back to the standard that this evidence has to be looked at, the prism under which the court has to evaluate this. The question is, under the very little evidence standard of Kennedy and the concurrence, is what evidence could a legislative body look at to reasonably conclude that an adult arcade would survive? If you'll indulge me for one second, we have here these two businesses, one 2,500 square feet, one 3,000 square feet, roughly two-thirds the size of this room approximately, one in a crowded area of Hollywood and one in a strip mall along Alameda Street. The rents here are dirt cheap. When you look at Ms. Spaulding's analysis, you don't find that these adult arcades are low profitability, lost leaders, places that are on the edge. What you find is that one of these arcades, Alameda Books, is bringing in $224,000 in net profits for Alameda for a year on average and $204,000 for Highland. The profitability of the arcade portion of these businesses far exceeds the profitability of the bookstore portion. It's certainly reasonable to conclude, based upon that, that if you separate them, this business will go on as a viable business. Even giving plaintiffs the benefit of the doubt, what they testify to is that perhaps 20 percent of the clientele of these businesses share both. Even if you assume that entire loss of clientele, the profitability of the adult arcades based upon just a strict division of the revenues is still close to 20 percent. Anybody looking at these type of financials could certainly reasonably come to the conclusion, at least have a disputed issue of fact, that these businesses could survive by themselves. Let me ask you something. You said that Judge Prayerson just struck the Spaulding conclusion, but not the rest of her factual analysis? Yes, Your Honor. At page 26 of the opinion, Judge Prayerson states, and I quote at line 18, Ms. Spaulding's conclusion lacks foundation. And it's the plaintiffs who devote a substantial portion of their brief and explanation explaining that Ms. Spaulding, of course, does have the foundation and the expertise to testify about how to divide up these revenues and how to adjust them for excess compensation and so forth. Their only contention here is the final conclusion based upon the speculative nature of their own declarations. All right. Thank you, counsel. If I could have one minute and rebuttal if necessary. Thank you, Your Honor. May it please the Court. Good afternoon, I guess. My name is Clyde DeWitt, and I represent the plaintiffs and affilees, Alameda Books and Highland Books. To the question posed by Judge Wardlaw, the declarations are self-serving. Well, the people who made them are in the industry that's involved here, and that's why they're experts. Right, but my question is, aren't there other people involved in the industry that aren't closely connected to the very plaintiffs in this case? Also available? They are, or at least one of them is. The other one is a company that builds the arcades, so I guess maybe they have some prejudice. But here's what's important about this, and I sort of anticipated this coming. Well, none of your case rests almost entirely upon the fact that the judge rejected the city's expert witness and accepted yours. That's the end of the case, I think, practically. And I have too much quarrel with rejecting the city's witness, because I don't think she knew anything about the business, apparently. But why did he accept these two – I guess that's what you're getting to now. Why did he accept these two declarations from these two guys who were in the business? I mean, it would have been amazing if they'd said anything opposite of what they did say. So their credibility seems to me – is their credibility sufficient to cast doubt upon the – that's the legal standard here. He's going to cast doubt upon the city's case, right? Well, there's a couple of things. That seems to me to be the crux of the whole thing. Point one, the admission or exclusion of expert testimony is an abuse of discretion standard. Well, I understand that. And point two is the city didn't object on appeal to the fact that the judge failed to exclude those two experts. They waived it. No, but that's not the point. The point is, having admitted it, is it sufficient to cast doubt? And that's what I was about to tell you. In Justice Kennedy's opinion, he says, page 449 of 535 U.S., a city must advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects while leaving the quantity and accessibility of speech substantially intact. The city has the burden of that. Now, the city could have taken the depositions of these two people. They elected not to. And just because you can claim to a trier a fact that the witness has some bias. I don't know what witness in cases like this doesn't have some bias. The Spaulding has bias. The city paid her. The city also has evidence of the talk of the town situation. And Justice Kennedy also said that the burden on the city is minimal, because beyond everything else we still give deference to the city. This is where the city is running things together. The burden on the city in terms of showing secondary effects to justify the ordinance, that's not part of the summary judgment in this case. There is an issue, battle of experts on whether the secondary effects justify it. My experts say they don't. Their experts say they do, and that would have to be a trial. So that's not part of the summary judgment. The summary judgment is all about what I just said. And the city failed to prove what I just read. Purpose and effect will be that the businesses will divide and remain viable. And Ms. Spaulding said, well, they both make a profit. And as they are, well, if she went and audited AMC Multicinema, or whatever that company is, the concession stand versus the box office receipts, she would say, well, the concession stands do very well, and the theater does okay on the box office receipts, too. But I promise you, if you move the concession stand 1,000 feet away and still try to charge $8 for a box of popcorn, it's a whole different thing. The point I made in my brief about what I think supports the expert testimony of my two witnesses is the beekeeper thing, which I've since been advised that honeybees are what are involved, not bumblebees. My entomology, I guess, is not good. But these are beekeeper-type witnesses. They've been there. They've been in the business for years and years and years. They know what works and what doesn't. They know about the marketing. And it's not even my burden. It's the city's burden to prove the opposite. You know, it's your burden to cast doubt. If we find the city's put in enough evidence, and that's already presumed here, it's your burden to cast doubt on that evidence. No, that's not right. That's what happens when we're saying the studies don't justify the ordinance. That's Justice O'Connor's opinion. The burden-shifting analysis. Justice Kennedy's opinion says before you get to any of that, what you need to do is analyze whether the city can establish that the purpose and effect of the ordinance is essentially, under these facts, that the businesses will divide and continue to thrive rather than one will close. And the only evidence before the court was one will close. And that's from the beekeepers, not from the aeronautical engineer. Your opponent says that this testimony or this declaration that wasn't admitted showed that these arcades were fabulously successful. And that contradicts the opinion of these experts that said, well, they can't exist on their own. So let's have a trial. She establishes that independently, if you break out the cost and do the cost accounting, that's what she is, the cost accountant. If you do that analysis, then it shows that both components of the business are profitable. She doesn't know what's going to happen if you try to operate them separately. And that's the problem Judge Kragerson had with her testimony. I don't disagree with her breakout of costs or anything like that, nor would I disagree with her ability to do that at a movie theater. But if she then testified, well, I don't know really anything about the motion picture theater business, but the concession makes a lot of money, probably more than the box office. So if you moved it 1,000 feet away, it would still make a lot of money. And she just can't make a conclusion like that because she doesn't know the theater industry or the adult bookstore. Well, assuming for the moment that the city's expert, Ms. Balding, is out of the picture and the district judge acted properly in excluding that, let's focus on the two declarations from your people. They say quite clearly that in their experience the arcades never operate separately. And I'm willing to accept that as a statement of their vision of the facts. They're industry experts on the point. They give us various reasons why there's a symbiotic relationship between the bookstore and the sort of the video store, selling product, and the arcade. Some of the patrons will kind of sample, look through, and then decide what they're going to buy. So I understand that. But it's a little unclear to me what their basis is for concluding that just because you always find these together, that a freestanding arcade would not survive. But the only thing they say is, yeah, those old movie theaters, they're almost all gone. But, of course, these video arcades are really different from the old movie theaters. They are. They are. And, by the way, while I'm on that, the evidence of an arcade without a bookstore, this is a 1970 case. When the peep shows were literally that, I mean, this was a long time ago. And I don't see that that's relevant. Well, that was pre-Internet. And the economic environment for various forms of porn, of course, is exceptionally different now with the Internet. But what did the two witnesses of mine say that is foundation? Well, they said, not only do I know all about the marketing of these businesses because I've been there for 15, 20, 30 years, whatever it was, but also I go to trade shows. I discuss this with other people in the business. I understand all that. But what I'm saying is I'm unsure how I am obliged to draw the conclusion or agree with their conclusion that a standalone arcade would be unprofitable merely from the fact that in the real world as we now see it, that they are always combined. It may be that they're symbiotic relationships, and therefore you want to combine them. But that doesn't necessarily tell me that a standalone video arcade will be as unattractive to the general public as a standalone concession stand that asks eight bucks for a box of popcorn. I think they're perfectly capable of two answers to that. Answer number one is I think they're perfectly capable of saying that just because they know more about it than anybody. Yeah, but I don't know that they know that. I mean, it's unclear to me from what they say that they know that. But there's a second more important thing, which is that question assumes that I had the burden of proof and I didn't. And the city has no evidence that they will survive separately, only that they are profitable as presently configured. Whether or not they survive depends on a lot of things. And I guess I have two questions. Like, wouldn't it depend on location? And I mean, I don't know what other things, but I intuitively know it would probably depend on location. And then I guess my other question is maybe they wouldn't survive not because of the statute, which is going after secondary effects, but just because now you can buy all this stuff off your TV at home or get it off your computer. I mean, there's lots and lots and lots of other reasons why they wouldn't survive other than the existence of the ordinance. Well, they won't survive is the fact of the matter, and they are surviving and thriving, as he pointed out. Well, you say they won't survive, and your evidence is these two declarations. Yes, which was evidence in opposition to nothing. And I mean, the city has the burden of proof here. And there's a second thing that has to do with this, which is the argument we made, which was right for summary judgment, but the judge didn't see the need to make it, which is their expert says, any time you have one of these businesses, it creates secondary effects. And what the ordinance says is, well, and combined with Justice Kennedy's requirement, that the businesses have to separate and be able to survive. So now you're going to have four businesses instead of two. How does it reduce secondary effects? It's going to make them worse, because certainly from a property value standpoint, I think it's obvious to everyone that if there's a property value dilution from one of these businesses because the sign is there and it says adult something or other and people say, gee, this isn't a very good neighborhood, that's the theory anyway. You make that argument in your brief all the time. It seems to me that's an argument for designing a more effective ordinance rather than winning this case. I'm not sure I understand. No, because you're just saying, well, why would the city do that if it would create more secondary effects? You would have to ask the city council that. But in fact, well, when the city wrote this ordinance, we didn't have the Alameda Books opinion. And there's a pretty good argument that says, well, why they did this is they don't like arcades and they know the arcades will go away because they can't operate on their own. But I'm still kind of chewing on the strength of the declarations from your side. One of the primary arguments that they have as to why the standalones won't survive, why they won't survive as standalones, is that they would be perceived as, quote, seedy, close quote, and people therefore wouldn't enter them. You know, the bookstore plus arcade looks pretty seedy to me. I mean, I'm not sure. Some of them are. Well, I mean, I'm not a regular patron, but if you've been to where the courthouse is in San Francisco, you'll know they're all around me. They're all seedy. I would take issue with that globally, I think. Well, all the ones around my courthouse are. Yes. Well, I've been to your courthouse and I agree with you. But that doesn't necessarily follow that they have to be that way, the retail component of the thing. But where there's on-premise entertainment. And the fact that the seediness doesn't seem to, I guess, if it diminished the patronage of the arcade, I think they might, you know, make the thing less seedy. But that doesn't seem to deter. I mean, just the fact that it's going to be seedy if it's all by itself as a freestanding arcade, that didn't carry much weight with me. Not that it would be, but it would be perceived as such, even if it isn't. I understand, but it just didn't make much sense to me. But I still emphasize the fact that I'm basically offering these declarations to counter nothing. It's not my burden of proof. I could have won this case without any declarations. Because the city doesn't show that they're able to separate, like Justice Kennedy required in the sentence that I just read a few minutes ago. So, and again, there's a second argument that Judge Kragerson did not reach that you may, which is the one that, according to their expert, if you divide up the arcades and the bookstores, it results in four businesses instead of two. And each business causes its own secondary effects. Now, there's another thing that was mentioned here, the standalone arcades and talk of the valley. Okay. Let's assume the city's absolutely right. I'm not sure about the evidentiary foundation or just citing an opinion, but let's say 90% of the secondary effects are in the arcades and 10% are in the retail business. Okay. So if there's 90 units of bad secondary effects from the retail and 10 units from, I mean, from the arcade and 10 units from the retail, okay, let's assume you divide those businesses. There's no evidence that it's still going to be 90-10 or not. I mean, you would assume that if the arcades cause these problems, whatever they may be, that if the arcades by itself, it's still going to cause the problem, and the city hasn't shown that it won't. And the city, I mean, maybe I made a mistake here. Maybe going through the summary judgment exercise, I operated on the, you know, I pretended to myself like I had the burden of proof, but according to Justice Kennedy's opinion, I could have just sat there and waited for the city to produce some evidence that it's okay, these places will divide and they'll do fine. They didn't do that. And to the extent Ms. Spaulding's declaration would support or conclusion would support that, the judge excluded it for good reason, and it's an abusive discretion standard, and it seems to me it's well within his discretion to say, well, she just doesn't know anything about what's going to happen when they divide these two up. And her declaration doesn't say anything to the contrary. So there's one other thing that kind of is brought up for the first time in argument by the city. Why not attach a bookstore that's, you know, 50% or 49% adult and 51% barns and nobles? And actually they did that. But there were some California state court decisions, and I can't tell you citations, I could send in a letter brief, but one is Pringle v. City of Covina, and the other one is KUHNS v. Somebody. And they both said, well, preponderance or primary or whatever means 51%. So if you have 49% adult merchandise and 51% other stuff, then you're not an adult bookstore under the Los Angeles Ordinance and the other ones that are like it. Even if you never sell a single copy of Charles Dickens? Right. The only thing you ever sell is the dirty picture. That's what some of these businesses did to get around this very ordinance. They put in a store that was 49% adult materials and 51% pencils and marbles. They said, well, count the inventory. It's 51% pencils and marbles, which they didn't sell very many of, I rather imagine. And what was it? It was an adult bookstore with, you know, pencils and marbles. Well, in People v. Municipal Court, real party event is Lucio, I believe it was, L-U-C-I-O, the Supreme Court of California said those cases are wrong and we reject them. The city is capable of calling something an adult bookstore with not very much adult inventory at all, and sort of left, you know, what the test would be open. So I guess the answer is if it's an adult bookstore, it works, but it would have to be maybe 85%, 90% Charles Dickens and a little place in the corner with a few adult things. And we're talking about two 2,500-foot storefronts or something like that in this case. They're small businesses in size. And so that would leave them with almost no adult inventory. And a lot of cities, and I think L.A. might be able to do this, is to say, well, give us your financial records, show where you're making your money. And because of the arcade, I guess the adult stuff would sell, and the Charles Dickens probably wouldn't because people will go to Barnes & Noble for that. In any event, I think I've answered everybody's questions. I've tried. Take another shot at me if you'd like. Thank you. Thank you. Just a couple of brief points, if I may. First, I just want to point out plaintiffs are not disputing that these businesses' components were, quote, fabulously successful, and they are. What we're talking here is about a plaintiff trying to protect a business model. Supreme Court precedent, this circuit's precedent is clear. The city is not required to protect a business model or protect plaintiffs from market forces. The analogy to a concession stand certainly doesn't work. Sure, plaintiffs would like to sell popcorn at $8 a pop over at a movie theater. But the test here is not that the requirement to overcome the legislative burden is, would it foreclose an avenue of communication? We know they like to sell $8 popcorn. We also know you can sell $4 popcorn by opening up a popcorn standard affair, selling nothing but popcorn. It does not prove by clear and convincing evidence, by actual and convincing evidence, that that's not possible. Second, we have all the other evidence that's in Ms. Spaulding's declaration that was not stricken, including the prior existence of arcades. We have the availability of over 4,000 sites in the city should these plaintiffs decide to separate. I also want to point out that the same type of declarations that was submitted here, the fact that they've never seen a stand-alone arcade, is addressed at two separate points in the Alameda Book Supreme Court decision and was rejected there as insufficient to allow summary judgment for. I'm sorry. Can I interrupt you? You said in Ms. Spaulding's declaration we have something about the prior existence of freestanding arcades. Is that right? Is that what you said? Ms. Spaulding states in her declaration that arcades began in the city of Los Angeles in 1970. She points to the- And where are you in her declaration? I have it here in front of me. Well, it's around excerpts of Record 5, roughly page 960. Excerpt 960? I've got ER in the 550s, 570s. Am I looking at the-are we looking at different declarations? It might be. She had a first declaration. She had two separate declarations. The first one, it may be the first. She has two declarations. The first declaration has an entire recitation of her industry research about adult businesses. It's in that one. I see. I'm reading it wrong. Okay. I can find out. And there's the findings from the court below that they previously existed. So, again, these type of declarations that are submitted here were previously rejected by the Fifth Court. And, finally, I- I find it interesting both you and your opponent are citing in your favor the idea that if you break up these combined operations, they're going to proliferate into many different sites. They're saying that's going to produce more secondary effects. You're saying that's going to produce more freedom of speech. Well, I do find it interesting that they base one of their declarations on the proliferation of businesses. But, again, the legislative body can make the reasonable assumption that if you require them to separate, secondary effects will decrease. That's what the city's empirical evidence here, especially Talk of the Valley, shows. The last point I wanted to make, and this goes not only to what the city needs to prove under Kennedy and what is material here, but also to the burdens. The question really is here, what does the city need to prove? And I'm reading from a Fifth Circuit 2006 case that's interpreting Alameda. And it says, and I quote, this is 459 Fed Third 546 at page 561. It says, ultimately, we are not empowered by Alameda to second-guess the empirical assessments of a legislative body, nor were we expected to submit such assessments to a jury for reweighing. Instead, the relevant, quote, material fact that must be placed at issue is whether the ordinance is supported by evidence that can be reasonably believed to be relevant to the problem. So, again, I think that goes to the issue that the premise here is the availability of speech, not the survivability of arcades. And second, we have to look at the burden that plaintiffs need to meet to overcome what Alameda has placed on them. And that's actual evidence with clear, they need to cast direct doubt with actual and convincing evidence. And we just don't believe that this record supports what the district court found. All right. Thank you, counsel. Alameda Books v. City of Los Angeles is submitted.
judges: Cudahy, Wardlaw, Fletcher W.